<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CRAIG CHIACCHERI, | Civil Action No. 23-07056 (JKS)(CLW) |
| Plaintiff, | |
| v. | **OPINION** |
| ZURICH AMERICAN INSURANCE COMPANY, | July 24, 2024 |
| Defendant. | |

**SEMPER**, District Judge.

Before the Court is Plaintiff Craig Chiaccheri's ("Plaintiff" or "Chiaccheri") Motion for Summary Judgment (ECF 9) and Defendant Zurich American Insurance Company's ("Defendant" or "Zurich") Cross-Motion for Summary Judgment (ECF 12), pursuant to Federal Rule of Civil Procedure 56. The Court has carefully considered the parties' submissions and decided the motions without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Rule 78.1(b). For the following reasons, the Court **GRANTS** Zurich's Cross-Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

I.   **FACTUAL AND PROCEDURAL HISTORY[1]**

A.  **Factual Background**

Plaintiff Craig Chiaccheri was involved in a motor vehicle crash on May 10, 2022 with non-party tortfeasor Harvey Gonzalez ("Gonzalez"). (ECF 9, Pl. SOMF ¶ 1.) At the time of the

---

[1] The facts and procedural background relevant to these Motions are drawn from the Complaint, (ECF 1-2, "Compl."), Plaintiff's Motion for Summary Judgment (ECF 9, "Pl. MSJ"), Defendant's Opposition and Cross-Motion for Summary Judgment, (ECF 12, "Def. Cr. MSJ"), both parties' submissions regarding undisputed material facts (ECF 9 at 4-8, "Pl. SOMF") (ECF 12-3, "Def. SOMF"), and documents integral to or relied upon by the Complaint. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

crash, Plaintiff was driving a motor vehicle which was owned by his employer TJX Companies, Inc.,[2] ("TJX") and insured by a policy of commercial automobile insurance issued by Zurich to TJX ("Zurich Policy"). (*Id.* ¶¶ 2-3; ECF 9-2, Ex. C, Zurich Policy.) Gonzalez maintained third-party liability insurance on his vehicle under a GEICO insurance policy ("GEICO Policy").[3] (ECF 9, Pl. MSJ at 3.)

On or around December 22, 2022, Plaintiff sought underinsured motorist ("UIM") coverage under the Zurich Policy. (ECF 9, Pl. SOMF ¶ 4.) On December 30, 2022, the Zurich UIM adjuster reviewed the claim and determined that the UIM limits under the Zurich Policy were $15,000/$30,000. (*Id.* ¶ 7.) During its investigation, Zurich's Claims Specialist discovered that Gonzalez maintained auto liability coverage on his vehicle in the amount of $100,000. (ECF 9-2, Ex. E.) On June 28, 2023, Gonzalez's insurance carrier offered $100,000 to settle Plaintiff's claim, which Plaintiff accepted. (*Id.* ¶ 11.) Shortly thereafter, on or around June 30, 2023, Plaintiff advised Zurich of his position that the $15,000 UIM limits were contrary to statute and requested a reformation of the UIM limits to match the liability limits.[4] (*Id.*) On July 18, 2023, Zurich advised Plaintiff of its position that "the New Jersey Split Uninsured and Underinsured Motorists Coverage Limits of $15,000 . . . apply to this matter." (*Id.* ¶ 14.)

### B.  Procedural History

On July 24, 2023, Chiaccheri commenced the instant action by complaint in the Superior Court of New Jersey, Law Division, Middlesex County under Docket No. MID-L-004124-23

---

[2] According to its 2022 Annual Report, TJX "is the leading off-price apparel and home fashions retailer in the United States and worldwide", it has "over 4,800 stores", and "[i]n 2022, overall TJX sales closed in on the $50-billion mark". (ECF 12-6, Ex. B.)

[3] The other driver involved in the accident, Gonzalez, maintained third party liability insurance on his vehicle in the amount of $100,000. (ECF 9-2, Exs. F, G.) The full $100,000 limit was tendered to Plaintiff as part of a settlement. (*Id.*)

[4] The Zurich policy provides $2,000,000 in "Covered Autos Liability" coverage. (ECF 9-2, Ex. C, Zurich Policy at 8.)

against Zurich American Insurance Company asserting claims for underinsured motorist ("UIM") coverage, reformation, and bad faith arising out of a May 10, 2022 motor vehicle accident which occurred in New Jersey.

On August 22, 2023, Zurich properly removed this case from state court to the United States District Court for the District of New Jersey. (ECF 1.) On September 12, 2023, Zurich filed an Answer to the Complaint with affirmative defenses. (ECF 5.) On December 6, 2023, Chiaccheri filed his motion for summary judgment, and on January 2, 2024, Zurich filed its cross-motion for summary judgment and opposition to Chiaccheri's motion. (ECF 9; ECF 12.)

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted if the movant shows that "'there is no genuine issue as to any material fact [and] the moving party is entitled to judgment as a matter of law.'" *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000) (alteration in original) (quoting Fed. R. Civ. P. 56(a)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, a court must construe all facts and inferences "in the light most favorable to the non-moving party." *See Boyle v. Cnty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998) (citing *Peters v. Del. River Port Auth. of Pa. & N.J.*, 16 F.3d 1346, 1349 (3d Cir. 1994)). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law[.]" *Anderson*, 477 U.S. at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Unsupported allegations, subjective beliefs, or argument alone, however, cannot forestall summary judgment. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1988) (nonmoving party may not successfully oppose summary judgment motion by simply replacing "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit.").

Thus, if the nonmoving party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 n.5 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23). Moreover, the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact." *Anderson*, 477 U.S. at 247-48.

## III.   DISCUSSION

### A.  New Jersey Law Applies

The Court applies the substantive law of the State of New Jersey pursuant to the mandates of *Erie R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938). "A federal court under *Erie* is bound to follow

state law as announced by the highest state court." *Edwards v. HOVENSA, LLC,* 497 F.3d 355, 361 (3d Cir. 2007).

### B. Insurance Interpretation Generally

The Court begins its analysis by outlining the basic principles for interpreting insurance policies. The interpretation of an insurance policy is a question for the Court to decide as a matter of law. *Wimberly Allison Tong & Goo, Inc. v. Travelers Prop. Cas. Co. of Am.*, 559 F. Supp. 2d 504, 510 (D.N.J. 2008). "Insurance policies are construed in accordance with principles that govern the interpretation of contracts; the parties' agreement 'will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled.'" *Memorial Props., LLC v. Zurich Am. Ins. Co.*, 46 A.3d 525, 532 (N.J. 2012) (quoting *Flomerfelt v. Cardiello*, 997 A.2d 991, 996 (N.J. 2010)). "In assessing the meaning of provisions in an insurance contract, courts first look to the plain meaning of the language at issue." *Oxford Realty Grp. Cedar v. Travelers Excess & Surplus Lines Co.*, 160 A.3d 1263, 1270 (N.J. 2017) (citing *Chubb Custom Ins. Co v. Prudential Ins. Co. of Am.*, 948 A.2d 1285, 1289 (N.J. 2008)). "If the language is clear, that is the end of the inquiry." *Oxford Realty Grp. Cedar*, 160 A.3d at 1270. "[I]n the absence of an ambiguity, a court should not engage in a strained construction to support the imposition of liability or write a better policy for the insured than the one purchased." *Id.* (internal quotation marks and citation omitted).

"When an ambiguity exists, courts should interpret the contract in accordance with the 'reasonable expectations' of the insured." *Shotmeyer v. N.J. Realty Title Ins. Co.*, 948 A.2d 600, 605 (N.J. 2008) (quoting *Performance Ins. Co. v. Jones*, 887 A.2d 146, 152 (N.J. 2005)); *see Memorial Props., LLC*, 46 A.3d at 532 ("The terms of insurance contracts are given their plain and ordinary meaning, with ambiguities resolves in favor of the insured.") (internal quotation marks

and citations omitted). Still, "courts will not manufacture an ambiguity where none exists" and "[a]n insurance policy is not ambiguous merely because two conflicting interpretations of it are suggested by the litigants." *Oxford Realty Grp. Cedar*, 160 A.3d at 1270 (internal quotation marks and citations omitted).

### C.  Legislative Interpretation Generally

Next, the Court briefly orients the parties with respect to the Court's responsibilities when interpreting legislative materials. The duty of a court in construing a statute is to determine the intent of the Legislature. *Safeway Trails, Inc. v. Furman*, 197 A.2d 366, 371 (N.J. 1964). Legislation should be interpreted in the context that serves the spirit of the law. *Asbury Park Bd. of Ed. v. Hoek*, 183 A.2d 633, 643 (N.J. 1962). The Legislature's intent is explicit if it is "stated in the language of the statute or in the pertinent legislative history," and implicit if it is "necessary to make the statute workable or to give it the most sensible interpretation." *Sexton v. Boyz Farms, Inc.*, 780 F. Supp. 2d 361, 364 (D.N.J. 2011) (citing *Gibbons v. Gibbons*, 432 A.2d 80, 84-85 (N.J. 1981)). Where the purpose of legislation is "remedial and humanitarian" any exception to its coverage must be "narrowly construed" consistent with that purpose and "the plain meaning of the language." *Service Armament Co. v. Hyland*, 362 A.2d 13, 17-18 (N.J. 1976).

### D.  The Zurich Insurance Policy at Issue

At the time of the accident, the vehicle driven by Plaintiff was insured by a policy of commercial automobile insurance issued by Zurich to TJX. (ECF 9, Pl. SOMF ¶ 15; ECF 9-2, Ex. C.) "The TJX Companies, Inc." is the only named insured on the policy. (ECF 9, Pl. SOMF ¶ 17.) The Zurich Policy provides $2,000,000 in "Covered Autos Liability" and the "NJ Uninsured and Underinsured Coverage" endorsement provides, Zurich "will pay all sums the 'insured' is legally entitled to recover from the owner or driver of an . . . 'underinsured motor vehicle'." (*Id.* ¶¶ 18,

23.)  However, the "New Jersey Split Uninsured and Underinsured Motorists Coverage Limits" amends the "NJ Uninsured and Underinsured Coverage" endorsement to provide that the most Zurich will pay for bodily injury to any person is $15,000. (*Id.* ¶ 28.)  Specifically, the Zurich Policy provides New Jersey UIM "Bodily Injury" coverage in the amount of $15,000 "Each Person" and $30,000 "Each Accident." (ECF 9-2, Ex. C, Zurich Policy at 181.)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**NEW JERSEY SPLIT UNINSURED AND UNDERINSURED MOTORISTS COVERAGE LIMITS**

This endorsement modifies insurance provided under the following:

NEW JERSEY UNINSURED AND UNDERINSURED MOTORISTS COVERAGE

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.
This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Named Insured:  THE TJX COMPANIES, INC. |
|---|
| Endorsement Effective Date: |

**SCHEDULE**

| Limit Of Liability | | |
|---|---|---|
| "Bodily Injury": | $15,000 | Each Person |
| | $30,000 | Each "Accident" |
| "Property Damage" | $5,000 | Each "Accident" |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | |

(*Id.*) Pursuant to the Endorsement, Zurich contends Gonzalez held coverage in excess of the Zurich Policy $15,000 limit, and therefore, Gonzalez's vehicle was not underinsured and the Zurich Policy's UIM coverage was not implicated. (ECF 12-2, Def. Cr. MSJ. at 5-6.) Plaintiff argues, however, that Defendant's policy is void because it violates public policy, specifically N.J. Stat. Ann. § 17:28-1.1(f). (ECF 9, Pl. MSJ at 16-18.) Plaintiff seeks reformation of the policy and asks the Court to convert the UIM coverage from $15,000 to the statutory maximum available amount of $2,000,000. (*Id.*)

### E.  UIM Coverage

First and foremost, "[t]here are important distinctions between [Uninsured Motorist] and [Underinsured Motorist] coverage." *Campbell v. Lion Ins. Co.*, 710 A.2d 576, 581 (N.J. Super. Ct. App. Div. 1998). Specifically, "[Uninsured Motorist] coverage must be included in every policy of insurance." *Id.* (citing N.J. Stat. Ann. § 17:28-1.1a). Thus, with respect to Uninsured Motorist coverage, New Jersey "courts have frequently struck policy provisions" when the provisions are more restrictive than what is mandated by statute. *Id.* (citations omitted). By contrast, Underinsured Motorist coverage must be offered to the insured by an insurance company but need not be accepted by the insured. *Id.* (citing *French v. N.J. Sch. Bd. Ins. Grp.*, 694 A.2d 1008, 1015 (N.J. 1997)). Here, the crux of the issue in this case revolves around Underinsured Motorist Coverage.

Underinsured motorist coverage is defined under New Jersey law to mean "insurance for damages because of bodily injury and property damage resulting from an accident arising out of the ownership, maintenance, operation or use of an underinsured motor vehicle." N.J. Stat. Ann. § 17:28-1.1(e)(1). The code section continues, in relevant part:

> A motor vehicle is underinsured when the sum of the limits of liability under all bodily injury and property damage liability bonds and insurance policies available to a person against whom recovery is sought for bodily injury or property damage is, at the time of the accident, less than the applicable limits for underinsured motorist coverage afforded under the motor vehicle insurance policy held by the person seeking that recovery.

*Id*. The elements of a viable UIM claim therefore include:

> (1) a claimant must be an insured vis-a-vis the policy providing UIM coverage; (2) he must have suffered losses as the result of personal injury or property damage in a motor vehicle accident for which another person or entity is legally responsible and which losses must exceed the liability coverages available to that other person; and (3) the applicable limits of his own UIM coverage must be greater than the limits of liability of all liability bonds and insurance policies available to the tortfeasor against whom recovery is sought.

CYNTHIA M. CRAIG & DANIEL POMEROY, NEW JERSEY AUTO INSURANCE LAW § 27:1 (2024). The statute makes clear that "[a] tortfeasor is not underinsured relative to plaintiff's damages, or relative to the judgment or judgments against him, but rather relative to the limits of the underinsured motorist coverage purchased by or for the person seeking recovery." *French*, 694 A.2d at 1010–11 (quoting *Tyler v. N.J. Auto. Full Ins. Underwriting Ass'n*, 550 A.2d 168, 170 (N.J. Super. Ct. App. Div. 1988)).

## F.  N.J. Stat. Ann. § 17:28-1.1(f)

In response to the New Jersey Supreme Court case *Pinto v. New Jersey Manufacturers Insurance Co.*, 183 N.J. 405 (2005),[5] the New Jersey legislature enacted N.J. Stat. Ann. § 17:28-1.1(f)[6] to prohibit the use and enforcement of step-down provisions in commercial auto policies that seek to lower UM/UIM coverage for employees:

---

[5] *See James v. N.J. Mfrs. Ins. Co.*, 83 A.3d 70, 83 (N.J. 2014) ("the amendment … prohibits the application of step-down provisions in business entities' motor vehicle insurance policies to limit the recovery of UM/UIM benefits by employees."); *Olkusz v. Brown*, 951 A.2d 1069, 1073 (N.J. Super. Ct. App. Div. 2008), *certif. denied*, 992 A.2d 792 (2010) ("S-1666 merely disallows the use and enforceability of a contractual clause, which the Supreme Court in *Pinto*, supra, found to be an issue of 'insurance contract interpretation.'").

[6] The legislative statement accompanying N.J. Stat. Ann. § 17:28-1.1(f) explains that the amendment was enacted in response to the New Jersey Supreme Court's decision in *Pinto*, which found those step-down provisions enforceable:

> This bill prohibits the use of "step-down" provisions in motor vehicle liability policies issued to corporate or business entities to lower uninsured or underinsured motorist coverage for employees to the limits of coverage available to the employees under their personal policies.

> This bill is in response to the New Jersey Supreme Court's decision in [Pinto]. In Pinto, the court held that as to a motor vehicle liability policy that names a corporate or business entity as a named insured, step-down provisions which limit uninsured or underinsured motorist coverage for employees of that entity that are not individually named on the policy are valid and enforceable. Thus, the court's ruling allows an employee's coverage under an employer's business motor vehicle insurance policy to be limited to the lower limits of uninsured or underinsured motorist coverage contained in the employee's individual motor vehicle liability policy, even in situations in which the employee is injured in a covered vehicle in a work-related accident, if the employer's policy so provides.

> This bill reverses the effect of the Pinto decision by prohibiting step-down provisions in these policies. Further, the bill expressly provides that a policy that names a corporate or business entity as a named insured shall be deemed to provide the maximum uninsured or underinsured motorist coverage available under the policy to any individual employed by the corporate or business entity, regardless of whether the individual is

Notwithstanding the provisions of this section or any other law to the contrary, a motor vehicle liability policy or renewal of such policy of insurance, insuring against loss resulting from liability imposed by law for bodily injury or death, sustained by any person arising out of the ownership, maintenance or use of a motor vehicle, issued in this State to a corporate or business entity with respect to any motor vehicle registered or principally garaged in this State, shall not provide less uninsured or underinsured motorist coverage for an individual employed by the corporate or business entity than the coverage provided to the named insured under the policy. A policy that names a corporate or business entity as a named insured shall be deemed to provide the maximum uninsured or underinsured motorist coverage available under the policy to an individual employed by the corporate or business entity, regardless of whether the individual is an additional named insured under that policy or is a named insured or is covered under any other policy providing uninsured or underinsured motorist coverage.

N.J. Stat. Ann. § 17:28-1.1(f).

### G. Plaintiff's UIM and Reformation Claims

Plaintiff contends that the Zurich Policy at issue is contrary to public policy as it runs afoul of N.J. Stat. Ann. § 17:28-1.1(f). As a result, Plaintiff demands reformation of the Zurich Policy in question, seeking maximum UIM coverage in the amount of $2,000,000.[7] (ECF 9, Pl. MSJ at 3, 16-18.)

Despite Plaintiff's arguments, the Court finds that the Zurich Policy does not violate statute or public policy. The Zurich Policy includes UIM coverage in the amount of $15,000 each person/$30,000 per accident, in compliance with New Jersey law. *See* N.J. Stat. Ann. § 17:28-1.1(a). During its investigation, Zurich's Claims Specialist discovered that the vehicle involved in the accident with Plaintiff had auto liability coverage in the amount of $100,000. (ECF 9-2, Ex.

---

an additional named insured under that policy or is a named insured or is covered under any other policy providing uninsured or underinsured motorist coverage.

Statement accompanying P.L. 2007, c. 163, approved September 10, 2007, Senate, No. 1666 at https://pub.njleg.state.nj.us/Bills/2006/AL07/163_.PDF.

[7] Plaintiff's Complaint also asserts that Zurich failed to comply with notice requirements concerning the election of coverage set forth in N.J. Stat. Ann. § 39:6A-23 and N.J. Stat. Ann. § 17:28-1.9. (See ECF 1-2, Compl. at Second Count, ¶¶ 3-4.) Plaintiff has abandoned this line of argument as it was not raised in his motion for summary judgment or in his reply brief in further support of his motion for summary judgment.

E.) Thus, Zurich determined that the vehicle was not an "underinsured motor vehicle" and the Zurich Policy's UIM coverage was not implicated. Despite Plaintiff's arguments, the Zurich Policy does not invoke a step-down provision to lower the limits available to employees in compliance with N.J. Stat. Ann. § 17:28-1.1(f). Finally, there is nothing in the text of N.J. Stat. Ann. § 17:28-1.1(f), the legislative history, or case law that supports Plaintiff's assertion that commercial auto policies to afford matching third party liability and first party UIM limits.

Reformation constitutes an equitable remedy available where "there is mutual mistake or where a mistake on the part of one party is accompanied by fraud or other unconscionable conduct of the other party." *Oravsky v. Encompass Ins. Co.*, 804 F. Supp. 2d 228, 236 (D.N.J. 2011) (citing *Heake v. Atl. Cas. Ins. Co.,* 105 A.2d 526 (N.J. 1954)). "For a court to grant reformation, there must be clear and convincing proof that the contract reformed is what the contracting parties understood and meant it to be." *Pierides v. GEICO Ins. Co.*, No. L-3995-08, 2010 WL 1526377, at *4 (N.J. Super. Ct. App. Div. Apr. 19, 2010). Plaintiff argues that Zurich "circumvent[ed]" their statutory requirements by issuing a policy with illusory UIM coverage to TJX and its employees. (ECF 9, Pl. MSJ at 15.) Plaintiff further contends that it is "clear" from the legislative statements that the first operative statement of the statute "forbids step downs[,]"[8] and that the second sentence[9] of the statute assures that employees are fully protected under their employer's UIM

---

[8] First sentence of N.J. Stat. Ann. § 17:28-1.1(f): "Notwithstanding the provisions of this section or any other law to the contrary, a motor vehicle liability policy or renewal of such policy of insurance, insuring against loss resulting from liability imposed by law for bodily injury or death, sustained by any person arising out of the ownership, maintenance or use of a motor vehicle, issued in this State to a corporate or business entity with respect to any motor vehicle registered or principally garaged in this State, shall not provide less uninsured or underinsured motorist coverage for an individual employed by the corporate or business entity than the coverage provided to the named insured under the policy."

[9] Second sentence of N.J. Stat. Ann. § 17:28-1.1(f): "A policy that names a corporate or business entity as a named insured shall be deemed to provide the maximum uninsured or underinsured motorist coverage available under the policy to an individual employed by the corporate or business entity, regardless of whether the individual is an additional named insured under that policy or is a named insured or is covered under any other policy providing uninsured or underinsured motorist coverage."

policy because the second sentence provides employees of a company with the maximum UIM coverage available under a policy of insurance when the named insured is their employer's company. (*Id.* at 16.)

The Court first notes that Plaintiff's interpretation of N.J. Stat. Ann. § 17:28-1.1(f) goes beyond the plain language of the statute and is not supported by the legislative history discussed *supra*. Indeed, Plaintiff seeks UIM benefits from Zurich by virtue of expansion of N.J. Stat. Ann. § 17:28-1.1(f). Specifically, Plaintiff seeks entitlement to the maximum UIM coverage that TJX was permitted to purchase, matching third party liability and first party UIM limits and also seeks reformation of the UIM coverage to the maximum of $2,000,000. However, the plain text of N.J. Stat. Ann. § 17:28-1.1(f) provides that "[a] policy that names a corporate or business entity as a named insured shall be deemed to provide the maximum uninsured or underinsured motorist coverage available under the policy to an individual employed by the corporate or business entity . . ." Thus, the maximum UIM coverage available under the Zurich Policy is the policy's stated UIM limit without application of any step-down provision. The maximum UIM coverage available under the policy is not, as Plaintiff claims, equal to the policy's separate third-party liability limit.[10] Here, the language relied upon by Plaintiff simply bars enforcement of step down provisions which seek to lower the UM/UIM coverage available to an employee of a corporation or business by declaring that the policy will "be deemed" to provide "the maximum uninsured or underinsured motorist coverage available under the policy", i.e., the stated UM/UIM limit irrespective of any

---

[10] In drawing this conclusion Plaintiff relies on N.J. Stat. Ann. § 17:28-1.1(b) to suggest that the Zurich Policy's first party UIM limit must equal the policy's separate third-party liability limit. (*See* ECF 9, Pl. MSJ at 15-16.) However, N.J. Stat. Ann. § 17:28-1.1(b) requires that insurers provide the named insured with the option to purchase UIM coverage, subject to the condition that the limits of such UIM coverage "shall not exceed the insured's motor vehicle liability policy limits." *See Universal Underwriters Ins. Co., Recreational Products Ins. Div. v. New Jersey Mfrs. Ins. Co.*, 690 A.2d 1104, 1110 (N.J. Super. Ct. App. Div. 1997), *certif. denied*, 697 A.2d 546 (1997) ("[N.J. Stat. Ann. § 17:28-1.1(b)] merely stipulates that an insured cannot purchase more UIM coverage than the liability coverage that has been purchased."). There is nothing in that provision, or N.J. Stat. Ann. § 17:28-1.1(f) itself, that supports the notion that first party UIM limits must equal third party liability limits by operation of law.

step-down provision.[11] Thus, hypothetically, if Zurich sought to provide a lower UIM limit to TJX's employees through the use of a step down provision, the Zurich Policy would "be deemed" to provide the employee with the maximum UIM coverage available under the policy which is $15,000. Plaintiff's conflation of the maximum UIM coverage available under the policy and the maximum UIM coverage his employer was permitted to purchase, but chose not to, contravenes the explicit text and legislative history of N.J. Stat. Ann. § 17:28-1.1(f).

Further, Plaintiff contends that the UIM limits in the Zurich Policy are not clear and unambiguous. As a result, Plaintiff insists the Court must interpret the policy in line with an insured's "reasonable expectations." (ECF 9, Pl. MSJ at 23.) The Court disagrees with Plaintiff. Under that doctrine, "'the insured's 'reasonable expectations' are brought to bear on misleading terms and conditions of insurance contracts and genuine ambiguities are resolved against the insurer.'" *Oxford*, 160 A.3d at 1270-71 (N.J. 2017) (citing *DiOrio v. N.J. Mfrs. Ins. Co.*, 398 A.2d 1274, 1280 (N.J. 1979)). Conversely, "where [an] insurance policy's provision is not ambiguous or otherwise misleading, courts need not consider 'objectively reasonable expectation' of average policyholder in interpreting the policy." *Cypress Point Condo. Ass'n v. Adria Towers, LLC*, 143 A.3d 273, 289-90 (N.J. 2016) (citing *DiOrio*, 398 A.2d at 1280-81) (emphasis added). *See also State v. Signo Trading Intern., Inc.,* 612 A.2d 932, 938 (N.J. 1992) (citing *Weedo v. Stone-E-Brick, Inc.*, 405 A.2d 788, 795 (N.J. 1979)) ("courts should resort to the doctrine of reasonable

---

[11] *See Hand v. Phila. Ins. Co.*, 973 A.2d 973, 982 (N.J. Super. Ct. App. Div. 2009), *certif. denied*, 983 A.2d 1113 (N.J. 2009) (finding that "be deemed" in the second sentence of N.J. Stat. Ann. § 17:28-1.1(f) refers to reformation "to provide the same levels of UIM insurance to employees as it did to the business entity."); *James*, 83 A.3d at 79-80 ("the two operative sentences of the new law direct how employees must be treated in the presence of [step-down] provisions. . . . the language of the two operative sentences clearly altered how policies containing [step-down] provisions would be permitted to operate in respect of employees. . . . [N.J. Stat. Ann. § 17:28-1.1(f)] simply thwarts implementation of [step-down] provisions for a certain class of insureds who otherwise might be subject to them, namely employees of a corporate or business entity whose policy contains such a provision.").

expectations only when 'the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage.'")

Here, the UIM limits are set forth in state specific endorsements that comply with each state's respective laws. The Zurich Policy Declarations direct the insured to endorsements to define the limits of UIM coverage and includes a conspicuously titled "New Jersey Split Uninsured and Underinsured Motorist Coverage Limits" endorsement that plainly sets forth the UIM bodily injury limits applicable to covered "autos" licensed or principally garaged in New Jersey:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## NEW JERSEY SPLIT UNINSURED AND UNDERINSURED MOTORISTS COVERAGE LIMITS

This endorsement modifies insurance provided under the following:

NEW JERSEY UNINSURED AND UNDERINSURED MOTORISTS COVERAGE

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Named Insured: THE TJX COMPANIES, INC. |
| Endorsement Effective Date: |

**SCHEDULE**

| Limit Of Liability | | |
|---|---|---|
| "Bodily Injury": | $15,000 | Each Person |
| | $30,000 | Each "Accident" |
| "Property Damage" | $5,000 | Each "Accident" |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | |

(ECF 9-2, Ex. C at 181.) It is undisputed that the Zurich Policy includes UIM coverage in the amount of $15,000 each person/$30,000 per accident in compliance with New Jersey law. *See* N.J. Stat. Ann. § 17:28-1.1(f).

As discussed *supra*, the New Jersey UIM coverage under the Zurich Policy only applied to damages that an insured is entitled to recover from the owner or driver of an "underinsured motor vehicle." (ECF 9-2, Ex. C. at 131.) For purposes of New Jersey UIM coverage, an "underinsured

motor vehicle" is defined in pertinent part as a motor vehicle "to which a liability bond or policy applies at the time of an 'accident', but its limit of liability is less than the Limit of Insurance for this coverage." (*Id*. at 135-36.) During its investigation, Zurich's Claims Specialist discovered that the vehicle involved in the accident with Plaintiff had auto liability coverage in the amount of $100,000. (ECF 9-2, Ex. E.) Therefore, the vehicle was not an "underinsured motor vehicle" and the Zurich Policy's UIM coverage was not implicated. In sum, there is no proper basis for this Court to reform the Zurich Policy and it declines to afford UIM coverage in an amount that Plaintiff's employer was permitted to purchase but chose not to.

Therefore, Plaintiff's Motion for Summary Judgment is **DENIED** and Defendant's Cross Motion for Summary Judgment is **GRANTED** with respect to Counts I and II of the Complaint.

### H. Plaintiff's Bad Faith Claim

Under New Jersey common law, a claimant seeking to establish bad faith in the first party context is required to show "'that no debatable reasons existed for denial of the benefits.'" *Badiali v. N.J. Mfrs. Ins. Grp.,* 107 A.3d 1281, 1288 (N.J. 2015) (citing *Pickett v. Lloyd's*, 621 A.2d 445, 457-58 (N.J. 1993)).[12] Plaintiff has also asserted a bad faith claim pursuant to the New Jersey Insurance Fair Conduct Act., N.J. Stat. Ann. § 17:29BB-1 ("IFCA") which became effective on January 18, 2022. "Pursuant to the IFCA, a first-party claimant who is entitled to benefits under an uninsured or underinsured motorist policy by an insurer may sue the insurer for 'an unreasonable delay or unreasonable denial of a claim for payment of benefits' under the policy."

---

[12] *See also Wadeer v. N.J. Mfrs. Ins. Co.*, 110 A.3d 19, 26 (N.J. 2015) (citing *Pickett*, 621 A.2d at 453) ("In order to make a showing of bad faith in a first-party claim based on a denial of benefits '[a] plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim . . . .'"); *Wacker-Ciocco v. Gov't Emps. Ins. Co.*, 110 A.3d 962, 967 (N.J. Super. Ct. App. Div. 2015) ("If there is a valid question of coverage, i.e., the claim is 'fairly debatable,' the insurer bears no liability for bad faith.").

*Torres v. USAA Cas. Ins. Co.*, No. 23-00083, 2023 U.S. Dist. LEXIS 143143, at *6 (D.N.J. Aug. 16, 2023).

Plaintiff's bad faith claim fails as a matter of law. Here, as discussed *supra*, Zurich determined, and the Court confirms that there was no UIM coverage available to Plaintiff under the Zurich Policy and consequently no predicate for bad faith. Regardless, throughout the claims process, Zurich acted reasonably in denying coverage. Following the crash, Zurich was in contact with Plaintiff and did not delay in processing Plaintiff's UIM claim. (ECF 9, Pl. SOMF ¶¶ 4-6.) Indeed, within weeks of Plaintiff seeking UIM benefits under the Zurich Policy, Zurich investigated and determined coverage to be unavailable. (*Id*. ¶¶ 7-14; ECF 12-2, Def. Cr. MSJ at 28.)

Based on the foregoing, Plaintiff's Motion for Summary Judgment is **DENIED** and Defendant's Cross Motion for Summary Judgment is **GRANTED** with respect to Count III of the Complaint.

## IV.    CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendant's Cross-Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment. An appropriate Order accompanies this Opinion.

*/s/  Jamel K. Semper*
**Hon. Jamel K. Semper**
**United States District Judge**

Orig:        Clerk
cc:          Cathy L. Waldor, U.S.M.J.
             Parties

16